Barry S Glaser, State Bar No. 70968
bglaser@swjlaw.com
**STECKBAUER WEINHART JAFFE, LLP**
333 S. Hope Street, 36th Floor
Los Angeles, California 90071
Tel: (213) 229-2868
Fax: (213) 229-2870

Attorneys for Plaintiff, the SONOMA COUNTY
TAX COLLECTOR

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>JOANN MARIE BECKMAN,<br><br>Debtor.<br><br>SONOMA COUNTY TAX COLLECTOR,<br><br>Plaintiff,<br><br>v.<br><br>JOANN MARIE BECKMAN, an individual,<br><br>Defendant. | CASE NO. 09-bk-13975 AJ 7<br><br>Adv No.<br><br>Chapter 7<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY**<br><br>**Hon. Alan Jaroslovsky**<br><br>Date:<br>Time: |

Plaintiff the SONOMA COUNTY TAX COLLECTOR, an individual ("Plaintiff") by and through its counsel of record, hereby files this Complaint to Determine Dischargeability of Debt pursuant to 523(a)(1)(A), (B) and (C); §523(a)(4), §523(a)(7); §727(a)(2), §727(a)(3), §727(a)(5); §727(C)(1) and (2) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, and complains and alleges against JOANN MARIE BECKMAN (the "Debtor" or "Defendant") as follows:
20007.006/59519
COMPLAINT TO DETERMINE DISCHARGEABILITY
Case: 09-13975  Doc# 21  Filed: 03/05/10  Entered: 03/05/10 13:38:50  Page 1 of 15

## PARTIES' JURISDICTION AND VENUE

1. This adversary proceeding is brought pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure, 523(a)(1)(A), (B) and (C); §523(a)(4), §523(a)(7); §727(a)(2), §727(a)(3), §727(a)(5); §727(C)(1) and (2) and applicable California law.

2. This Court has jurisdiction over this proceeding and constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(a), (b) and (c) and 1334. This adversary proceeding relates to a case under Chapter 7 of the Bankruptcy Code. The bankruptcy case was voluntarily commenced under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California on November 24, 2009 (the "Petition").

3. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a) because this action stems from the Petition pending in this district under the Bankruptcy Code.

4. Plaintiff is informed and believes, and based thereon alleges, that at all times relevant herein, Defendant was and is a resident of Guerneville, California, Sonoma County.

5. Plaintiff is further informed and believes and thereon alleges that, at all times relevant hereto, a unity of interest has existed between Defendant and Vacation Rentals, USA, Inc., a California corporation ("VRUSA"), such that any separateness between Defendant and VRUSA has ceased and that it would sanction a fraud or promote injustice if the separateness of Defendant and VRUSA were recognized. Plaintiff is further informed and believes and thereon alleges that Defendant and VRUSA, and each of them, are principals, agents, partners, joint venturers, members, owners, shareholders, directors, corporate officers, and/or the alter egos of one another; and, as a result, Defendant and VRUSA are responsible for the debts, obligations and duties of one another with respect to the claims asserted against them by Plaintiff. Wherefore, throughout this Complaint any allegation or reference to Defendant includes and incorporates VRUSA, and all such allegations shall be understood to refer to both Defendant and VRUSA.

## GENERAL FACTUAL ALLEGATIONS

6. According to Defendant's Schedule B, she owns 100% interest in VRUSA. Plaintiff is informed and believes, and based thereon alleges that VRUSA, listed and provided management services to approximately 120 vacation homes in Bodega Bay, California, and that VRUSA, was run by Defendant and her family.[1] Plaintiff is informed and believes, and based thereon alleges that Defendant's son, Michael Huffstutter, started a new vacation rental service called Sonoma Coastal Vacation Rentals, in partnership with another former VRUSA employee, and that this new business shares office space with Defendant's house-cleaning business called Dustbusters, on Highway 1.

7. Plaintiff is informed and believes, and based thereon alleges that Defendant and VRUSA, entered into an Agency Agreement with the homeowners of the vacation homes, and that Defendant and VRUSA collected rental money from renters/transients but they did not pay the homeowners rental payments that they received on behalf of the homeowners. In addition, Plaintiff is informed and believes, and based thereon alleges that Defendant and VRUSA agreed to deposit all rent collected by VRUSA into VRUSA's client Trust Account but they failed to do so. Furthermore, Plaintiff is informed and believes, and based thereon alleges that Defendant and VRUSA agreed to process a monthly accounting of all rent received and expenses to the homeowners, but they failed to do so.

8. In addition, Plaintiff is informed and believes, and based thereon alleges that Defendant and VRUSA failed to provide rental homes to the renters/transients and failed to return rental deposits to the renters/transients.

---

[1] Plaintiff is informed and believes, and based thereon alleges that Defendant's son, Jon Paul Huffstutter, worked at VRUSA with his sister Molly Huffstutter, brother Michael Huffstutter, and cousin Christine. Plaintiff further alleges that Jon Paul's wife was doing the books for VRUSA since August or July of 2009.

9. Plaintiff is informed and believes, and based thereon alleges that the Sonoma County Sheriff's Office has opened a criminal investigation of Defendant and VRUSA for fraud and embezzlement.

### The Transient Occupancy Tax:

10. On or about July 23, 2005, Defendant filed a Transient Occupancy Tax Registration with Plaintiff and she listed herself as the owner of VRUSA. A true and correct copy of the Transient Occupancy Tax Registration is attached hereto as **Exhibit "A."** Defendant and VRUSA failed to pay to Plaintiff, the 9% Transient Occupancy Tax (the "TOT"), which they collected from renters/transients. As of January 31, 2010, Defendant and VRUSA owe approximately $1,366,355.42 for the 2007, 2008 and 2009 overdue TOT.[2]

11. According to Ordinance No. 5823 of the Board of Supervisors, County of Sonoma, State of California, Amending Article III, Chapter 12 of the Sonoma County Code to Clarify the Intent and Purpose of the Provisions contained Therein (the Ordinance No. 5823), Section 12-11, "each transient is subject to and shall pay a tax in the amount of nine (9) percent of the rent charged" and that "[s]aid tax constitutes a debt owed by the transient to the court which is extinguished only by payment to the Operator or to the county."[3]

12. The Ordinance No. 5823, Section 12-11, also states that "[t]he transient shall pay the tax to the Operator of the lodging at the time the rent is paid," "[t]he unpaid tax shall be due

---

[2] According to Amendment to Schedule E filed by Defendant on January 25, 2010, Defendant listed $218,317.10 and $231,089.57 for the 2008 TOT and 2009 TOT respectively, owed by Vacation Rentals USA, Inc., and that they are "personally guaranteed."

[3] According to the Ordinance No. 5823, "'Operator' means the person who is proprietor of the lodging, whether in the capacity of owner, lessee, sublessee, mortgagee in possession, licensee or any other capacity. Where the operator performs his functions through a managing agent of any type of character other than an employee, the managing agent shall also be deemed an operator for the purposes of this article, and shall have the same duties and liabilities as his principal."

upon the transient's ceasing to occupy space at the lodging," and that "[i]t is the responsibility of the Operator to collect the tax, "and that "[i]f, for any reason, the Operator fails to collect the tax due at the time the rent is collected, the Operator becomes liable for the tax due."

13. The Ordinance No. 5823, Section 12-13, further states that "[e]ach Operator shall collect the tax imposed by this article to the same extent and at the same time as the rent is collected from every transient" and that "[t]he amount of tax shall be separately stated from the amount of the rent charged, and each transient shall receive a receipt for payment from the Operator."

14. According to the Ordinance No. 5823, Section 12-15, it states that "[e]ach Operator shall, on or before the last day of the month following the close of each calendar quarter, or at the close of any shorter reporting period which may be established by the Tax Collector, make a return to the Tax Collector, on formed provided by him, of the total rents charged and received and the amount of tax collected for transient occupancies" and that [a]t the time the return is filed, the full amount of the tax collected shall be remitted to the Tax Collector."

15. The Ordinance No. 5823, Section 12-15 further states that "[r]eturns and payments are due immediately upon cessation of business for any reason" and that "[a]ll taxes collected by Operators pursuant to this article shall be held in a separate trust account, apart from the rents or business revenues of the hotel, for the benefit of the county until payment thereof is made to the Tax Collector." Defendant did not list any trust account being held by VRUSA in her schedules of statement of financial affairs.

16. According to the Ordinance No. 5823, Section 12-16, there are three types of penalties:

Case: 09-13975   Doc# 21   Filed: 03/05/10   Entered: 03/05/10 13:38:50   Page 5 of 15

1) "Original Delinquency. Any Operator who fails to remit any base tax[4] imposed by this article within the time required shall pay a penalty of ten (10) percent of the amount of the base tax in addition to the amount of the base tax, provided that the base tax and penalty are remitted within a period on or before thirty (30) days following the base tax due date;

2) Continued Delinquency. Any Operator who fails to remit any delinquent remittance on or before a period of thirty (30) days following the date on which the remittance first became delinquent shall pay the base tax and the ten percent penalty imposed by Original Delinquency, plus a second delinquency penalty of ten (10) percent of the amount of the base tax; and

3) Fraud. If the Tax Collector determines that the nonpayment of any remittance due under this article is due to fraud, a penalty of twenty-five (25) percent of the amount of the base tax shall be added thereto in addition to the penalties stated in Original Delinquency and Continued Delinquency.

17. The Ordinance No. 5823, Section 12-16 further defines Interest: "In addition to the penalties imposed, any Operator who fails to remit any base tax imposed by this article shall pay interest at the rate of one and one-half (1 1/2) percent per month on the unpaid balance of the base tax, from the date on which the remittance first became delinquent until paid in full." The Ordinance No. 5823, Section 12-16 further states that "Penalties Merged with Tax. Every penalty imposed and such interest as accrues under the provisions of this section shall become a part of the tax required by this article to be paid." Defendant has incurred and failed to pay penalties and interest. As of January 31, 2010, Defendant and VRUSA have incurred $557,999.78 in penalties and interest, and $84.00 in lien fees.

---

[4] Base Tax is defined as the tax to be collected by an Operator pursuant to Section 12-13 of the Ordinance No. 5823.

18. According to the Ordinance No. 5823, Section 12-20, Plaintiff is entitled to collect attorneys' fees from Defendant: "Any tax required to be paid by any transient under the provisions of this article shall be deemed a debt owed by the transient to the county. Any such tax collected by an Operator which has not been paid to the county shall be deemed a debt owed by the Operator to the county. Any person owing money to the county under the provisions of this article shall be liable to an action brought in the name of the county for the recovery of such amount. The county shall be entitled to recover from anyone found liable for the debt, any costs, including attorney's fees, personnel costs, or other expenses incurred by the county because of the failure to timely remit tax proceeds to the County."

**The Business Improvement Area Tax:**

19. Pursuant to the Chapter 33 of the Sonoma County Code, Defendant and VRUSA are also liable for Business Improvement Area tax (BIA), which is an additional 2%, to Plaintiff. As of January 31, 2010, Defendant and VRUSA owe approximately $298,395.86 for the overdue BIA tax.

20. The TOT and BIA tax are governed by the California Revenue and Tax Code 7280, et seq.

**The Additional Taxes Withheld by Defendant:**

21. Based on Plaintiff's audit of Defendant and VRUSA's records, Plaintiff discovered that Defendant and VRUSA charged the TOT on the Total Rent Due amount, which includes tax on various fees, but then they backed those fees out and submitted tax to Plaintiff only on the actual room charge. For example, Defendant and VRUSA provided a statement of account to a renter/transient (Sheet A), which is what the renter/transient receives as their receipt, and the TOT is charged on the whole $910.00. A true and correct copy of Sheet A is attached hereto as **Exhibit "B."**

22. However, Defendant and VRUSA submitted to Plaintiff a Reservations Report (Sheet B), which indicates that they only collected and taxed $750.00. A true and correct copy of Sheet B is attached hereto as **Exhibit "C."**

23. In actuality, Defendant and VRUSA's internal record (Sheet C) shows that although they charged taxes to renters for the whole $910.00 ($750 room rate plus all the fees booking - $25, garbage - $20, linen - $40, cleaning - $60, and supplies - $15), they only submitted taxes on the $750 room rate. They kept the additional $17.60 that was collected in TOT/BIA (listed as Tax On Add Ons) for themselves and only claimed that $67.50 was collected in TOT (listed as Sales Tax Due) and $15.00 was collected for BIA (listed as Civil Assessment). A true and correct copy of Sheet C is attached hereto as **Exhibit "D."**

24. As of January 31, 2010, Defendant and VRUSA owe a total of $2,208,326.26 (for TOT of $1,366,355.42 + BIA taxes of $298,395.86 + Interest and Penalties of $557,999.78 + Fees of $84.00) that Defendant and VRUSA withheld and unpaid to Plaintiff for their own benefits. A true and correct copy of the breakdown of TOT, BIA, Interest & Penalties, and Fees is attached hereto as **Exhibit "E."**

### FIRST CLAIM FOR RELIEF

[Nondischargeability Based Upon A Tax – 11 U.S.C. §§ 523(a)(1)(A), (B) and (C)]

25. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 24 above as though set forth in full herein.

26. As set for the above, Defendant and VRUSA failed to pay for a tax of the kind and for the periods specified in section 508(a)(8)(C), whether or not a claim for such tax was filed or allowed. In fact, Plaintiff recorded six (6) TOT liens against Defendant and VRUSA, and one for the 4th quarter 2009 is in process to be recorded. True and correct recorded copies of the six (6) TOT liens are attached collectively hereto as **Exhibit "F."**

27. As set forth above, Defendant and VRUSA collected taxes from renters/transients

but intentionally failed to file returns, or equivalent reports or notices, with Plaintiff.

28. As set forth above, Defendant and VRUSA collected taxes from renters/transients, and thereby had the means to pay taxes, but intentionally failed to pay taxes to Plaintiff, and thereby willfully attempted to evade or defeat a tax within the meaning of section 523(a)(1)(C). *In re Fretz*, 244 F.3d 1323.

## SECOND CLAIM FOR RELIEF

### [Nondischargeability Based upon Fraud or Defalcation While Acting in a Fiduciary Capacity 11 U.S.C. § 523(a)(4)]

29. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 24, 26 through 28 above as though set forth in full herein.

30. At all relevant times, Defendant owed Plaintiff fiduciary duties as Operator of the vacation rental homes. As set forth above, Defendant was obligated to hold all taxes collected in a separate trust account, apart from the rents or business revenues of the rental homes, for the benefit of the county until payment thereof is made to Plaintiff.

31. As set forth above, Defendant failed to hold all taxes collected in a separate trust account. Therefore, Defendant's conduct was an intentional breach of her fiduciary duties as the Operator; that Defendant failed to establish that her intentional breach of trust should have been excused; that Defendant's conduct met the criteria for embezzlement, and she in fact embezzled the taxes collected when she did not list them in her schedules or statement of financial affairs, and therefore, in her capacity as Operator, did, in bad faith, intentionally and wrongfully take, conceal or dispose of the taxes collected. Alternatively, based on the confluence of the Defendant's personal guarantee to VRUSA's indebtedness, the fact that VRUSA's indebtedness arose from its breach of its fiduciary duty to Plaintiff, the fact that this breach of a fiduciary duty was brought about by Defendant's personal conduct, and the fact that the Defendant's conduct amounted to a breach of her fiduciary duty to VRUSA, Defendant's indebtedness to Plaintiff under the personal guarantee resulted from her defalcation while acting in a fiduciary capacity. *Airlines Reporting Corp. v. Ellison (In re Ellison)*, 296 F.3d 266 (4th Cir. 2002).

Case: 09-13975    Doc# 21    Filed: 03/05/10    Entered: 03/05/10 13:38:50    Page 9 of 15

32. Even if Defendant did not act knowingly or willfully, in the sense of specific intent, Defendant's actions were so egregious that they come close to the level of fraud, embezzlement, or larceny. *Rutanen v. Baylis (In re Baulis)*, 313 F.3d 9, 49 C.B.C.2d 684 (1st Cir. 2002).

33. Based upon Defendant's conduct described above, Defendant committed fraud, and/or defalcation while acting in a fiduciary capacity to Plaintiff, as the Operator for which Plaintiff is the sole beneficiary. Defendant's actions, as alleged above were fraudulent, willful, and knowing, and therefore, justify an awarding of additional penalties pursuant to the Ordinance No. 5823.

### THIRD CLAIM FOR RELIEF

### [Nondischargeability Based Upon A Fine, Penalty, Or Forfeiture Payable To and For the Benefit of A Governmental Unit - 11 U.S.C. § 523(a)(7)]

34. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 24, 26 through 28, and 30 through 33, above as though set forth in full herein.

35. Based upon the facts described above, not only Defendant and VRUSA have failed to pay taxes but they have also incurred penalties, which became lawfully due when delinquent taxes were not paid.

36. Although the taxes owed by Defendant and VRUSA to Plaintiff became delinquent, and Plaintiff demanded that Defendant and VRUSA pay penalties, Defendant and VRUSA failed to remit any taxes, penalties, or interest.

### FOURTH CLAIM FOR RELIEF

### [Nondischargeability Pursuant to 11 U.S.C. § 727(a)(2)]

37. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 22, 24 through 26, 28 through 31, and 33 through 34, above as though set forth in full herein.

38. Pursuant to 11 U.S.C. § 727(a)(2), a debtor shall be granted a discharge unless "the debtor with the intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed,

mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition . . . "

39. As set forth above, Defendant has failed to properly disclose the extent of her interest and the value of a new business started by Defendant's son and former employee called Sonoma Coastal Vacation Rentals. Defendant's conduct was an intentional breach of her fiduciary duties as Operator of the vacation rental homes; that Defendant failed to establish that her intentional breach of trust should have been excused; that Defendant's conduct met the criteria for embezzlement, and she in fact embezzled the taxes collected for Plaintiff when she transferred it out of the trust account to herself or her son's new business; that Defendant intentionally took the taxes collected in bad faith; that Defendant falsely transferred, removed, or has permitted to be transferred, removed or concealed the taxes collected to her son's new business in order to avoid paying taxes to Plaintiff; and that Defendant, in her capacity as Operator, did, in bad faith, intentionally and wrongfully take, conceal or dispose of the collected taxes.

40. Based upon the facts described above, Plaintiff is informed and believed, and based thereon alleges, that Defendant intentionally diverted taxes collected and to be paid to Plaintiff for her own personal benefit, and in breach of her fiduciary as Operator, and did so through deceit with fraudulent intent to deprive Plaintiff of these amounts within one (1) year prior to the Petition Date.

### FIFTH CLAIM FOR RELIEF

### [Nondischargeability Pursuant to 11 U.S.C. § 727(a)(3)]

41. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 24, 26 through 28, 30 through 33, 35 through 36, and 38 through 40 above as though set forth in full herein.

42. Pursuant to 11 U.S.C. § 727(a)(3), a debtor shall not be granted a discharge where "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained . . ."

43. Based upon the facts described above, Plaintiff is informed and believed, and based

11
COMPLAINT TO DETERMINE DISCHARGEABILITY
Case: 09-13975    Doc# 21    Filed: 03/05/10    Entered: 03/05/10 13:38:50    Page 11 of 15

thereon alleges, that Defendant has failed to keep or preserve any recorded information for taxes that was required to be held in a separate trust account, apart from the rents or business revenues of the rental business, for the benefit of Plaintiff until payment thereof is made to Plaintiff.

44. In addition, Plaintiff is informed and believed, and based thereon alleges, that Defendant failed to keep or maintain books, documents and records in connection with the separate trust account as she was required as Operator.

## SIXTH CLAIM FOR RELIEF

### [Nondischargeability Pursuant to 11 U.S.C. § 727(a)(5)]

45. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 24, 26 through 28, 30 through 31, 35 through 36, 38 through 40, and 41 through 44 above as though set forth in full herein.

46. Pursuant to 11 U.S.C. § 727(a)(5), a debtor shall not be granted a discharge where "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities."

47. As set forth above, Defendant failed to pay the homeowners rental income money, the renters return deposits, and Plaintiff for taxes owed by Defendant and VRUSA. All of these funds were to be deposited and segregated in separate trust accounts. However, Defendant and VRUSA have failed to pay any of these funds. Furthermore, Defendant paid herself $200,000.00 within last two years and incurred approximately $1,975,978.85 in secured and unsecured claims (*See* Summary of Schedules). Plaintiff is informed and believed, and based thereon alleges that Defendant shut down the operations of VRUSA on or about January 21, 2010. Also, Defendant's schedules only show properties that are over-encumbered and she did not list any bank accounts or assets being held by VRUSA. Unless and until Defendant explains satisfactorily where all of the trust money went, Plaintiff is informed and believed, and based thereon alleges that Defendant's conduct was an intentional breach of her fiduciary duties as Operator of the vacation rental homes; that Defendant failed to establish that her intentional breach of trust should have been excused; that Defendant's conduct met the criteria for embezzlement, and she in fact embezzled the taxes collected for Plaintiff when she transferred it out of the trust account to herself or her son's new

business; that Defendant intentionally took the taxes collected in bad faith; that Defendant falsely transferred, removed, or has permitted to be transferred, removed or concealed the taxes collected to her son's new business in order to avoid paying taxes to Plaintiff; and that Defendant, in her capacity as Operator, did, in bad faith, intentionally and wrongfully take, conceal or dispose of the collected taxes.

48. Based upon the facts described above, Plaintiff is informed and believed, and based thereon alleges, that Defendant has intentionally diverted monies received from Plaintiff, failed to keep or preserve any recorded information as to the disbursement of funds, and failed to disclose the converted funds in the bankruptcy proceeding.

## SEVENTH CLAIM FOR RELIEF

**[Nondishargeability under 11 U.S.C. §§ 727(c)(1) and (2)]**

49. Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 24, 26 through 28, 30 through 33, 35 through 36, 38 through 40, 41 through 44, and 46 through 48, above as though set forth in full herein.

50. Pursuant to 11 U.S.C. § 727(c)(1) and (2), "a creditor . . . may object to the granting of a discharge under subsection (a) of this section [and] . . . on request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

51. Based upon the facts described above, and pursuant to 11 U.S.C. § 727(c)(1) and (2), it is requested that the bankruptcy trustee examine the acts and conduct of the Debtor/Defendant to determine whether any ground exists to deny a discharge.

## PRAYER FOR RELIEF

52. WHEREFORE, Plaintiff requests that this Court enter judgment as follows:

As to the First Claim for Relief:

53. That this Court determine the liability of the Debtor to the Plaintiff be deemed nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1)(A) (B) and (C) of the Bankruptcy Code. Plaintiff seeks damages in an amount to be proven at trial.

<u>As to the Second Claim for Relief:</u>

54. That this Court determine the liability of the Debtor to the Plaintiff be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code; and

55. For punitive damages.

<u>As to the Third Claim for Relief:</u>

56. That this Court determine the liability of the Debtor to the Plaintiff be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(7) of the Bankruptcy Code; and

57. For punitive damages.

<u>As to the Fourth Claim for Relief:</u>

58. That this Court deny the discharge of Defendant's debts pursuant to 11 U.S.C. § 727(a)(2) of the Bankruptcy Code.

<u>As to the Fifth Claim for Relief:</u>

59. That this Court deny the discharge of Defendant's debts pursuant to 11 U.S.C. § 727(a)(3) of the Bankruptcy Code.

<u>As to the Sixth Claim for Relief:</u>

60. That this Court deny the discharge of Defendant's debts pursuant to 11 U.S.C. § 727(a)(5) of the Bankruptcy Code.

<u>As to the Seventh Claim for Relief:</u>

61. That this Court order the bankruptcy trustee examine the acts and conduct of the Debtor/Defendant pursuant to 11 U.S.C. § 727(c)(1) and (2), to determine whether a ground exists for denial of discharge.

62. Plaintiff requests that this Court grant additional and further relief as this Court deems just and proper.

Dated: March 5, 2010     **STECKBAUER WEINHART JAFFE, LLP**

By: _____
    Barry S Glaser
Attorneys for the SONOMA COUNTY TAX COLLECTOR

20007.006/59519
Case: 09-13975   Doc# 21   Filed: 03/05/10   Entered: 03/05/10 13:38:50   Page 15 of 15